## James Zumwalt and another v. The State.

1. CONTINUANCE. — Though perfect in every other requirement of the statute, an application for a first continuance is fatally defective if based upon an affidavit that fails to allege that the continuance is not sought for delay.

2. SAME. — Applications not based on the statute, nor conforming to its requirements, are addressed to the discretion of the court below, and its disposition of them will not be revised on appeal, except when it appears that there was an abuse of such discretion.

3. CONFESSION. — Note a state of case in which it was correct to admit in evidence, against the defendants on trial, a confession which a joint offender, not on trial, made while under arrest.

APPEAL from the District Court of Gonzales. Tried below before the Hon. E. LEWIS.

The indictment charged James Zumwalt, William Walton, and Reuben Zumwalt with the theft of a gelding, the property of O. W. McBride. The two former jointly asked and obtained a severance from Reuben Zumwalt; and being found guilty, their punishment was assessed at ten years in the penitentiary. A new trial was refused, and they appealed.

McBride, the owner of the gelding, testifying for the

State, deposed that the animal was taken from his possession without his consent.   He was stolen in Gonzales County, on the night of January 10, 1878.   On that night witness fed and turned him into the field loose.   He was missed next morning, when witness went into the field to get him up.   Witness examined the country in the neighborhood of the field, and soon found the tracks of two horses going round the field.   After following these tracks around to the north-east corner of the field, witness saw where two other horses had come to them.   Witness followed these tracks some three miles, observing that the tracks of his horse were among them, which he identified by the size and shape, and found where two other horses had joined them. Witness then followed the track to the house of Adam Zumwalt, in Kerr County, some fifteen miles above Kerrville, and distant some 150 or 200 miles from the house of witness.   Witness and his party heard of the appellants frequently before reaching their house, in Kerr County, in doing which six days were consumed.   They reached the premises before daylight on January 17, 1878, and immediately surrounded the house.   A woman came to the door when they got the house surrounded, and to an inquiry responded that there were no men in or about the house. About that time, witness and his party heard a noise in the house like the cocking of a pistol, and asked the woman what it was, to which she responded that the noise was made by hogs under the house, eating corn.   Witness and his party then declared that they would not leave there until the men came out, as they knew them to be there, and who they were.   After quite a long time, the appellant James Zumwalt came out, and then William Walton, and finally Reuben Zumwalt, whom witness recognizes to be the men now in court.   Witness then got his horse from near the house, where he was tied.

Witness was accompanied in this expedition by ten or

eleven of his neighbors, some of whom had lost horses the same night that witness's horse was stolen. This party was armed. When James Zumwalt and Walton came out of the house, witness told them to sit down, as he was not sure that either was the man he wanted. When Reub Zumwalt came out, witness told him that he " was never so glad to see him in his life," and asked him where the horses were. He said he would go with us and show us where they were, and that witness's horse was " down there." Witness found no other men than these three, and brought all of them back and turned them over to the sheriff. Witness's horse which was stolen was worth about $60.

James Baker, for the State, one of the party which arrested the appellant, corroborated the last witness in all material particulars, and added that when Reub Zumwalt came out of the house he said, " You boys have caught us. I am a rascal, and am glad of it." When asked where the horses were, he answered that he would show us " their " horses, or the horse they " brought there." He then carried the party off some two or three hundred yards, where McBride's horse and three others were found. Reub Zumwalt then said there was another horse there somewhere, and soon one of the party brought up a horse which was out of sight. These horses could not be seen from the house, and witness and party did not know where they were until shown.

Jesse A. Clark, for the State, corroborates the testimony of the other two witnesses, and adds that on the night of the same 10th of January he lost two horses, and followed these appellants with the others. *En route,* found one of his horses traded off. At Zumwalt's he found the horse for which his was traded. One of witness's horses came home. He proved and got the other.

James Pittman, for the State, testified that on the evening of January 10, 1878, he was out in the road near his father's house, and about four miles distant from McBride's; and

while standing there, saw this party going along through the woods.    Had known Reub Zumwalt some two years, but had never seen the others of the party before.    Recognizes the three men at the bar as the three men he saw that evening.

No brief for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

Winkler, J.    The appellants were tried and convicted on a charge, in connection with one Reuben Zumwalt, of theft of a gelding, the property of one O. W. McBride.

It is proposed to notice specially in this opinion but three of the errors complained of in the bills of exception and in the assignment of errors : · First, the refusal of the court to grant a continuance ; second, the alleged error of the court in permitting the acts and statements of Reuben Zumwalt to be introduced as evidence against these appellants ;. and, third, the refusal to grant a new trial.

1. Agreeably to the record, three persons were charged with the theft, to wit, these appellants and Reuben Zumwalt, who was tried separately.    All three joined in an affidavit for a continuance, stating that "they are not safe in going to trial * * * for the want of testimony material for their just defence," setting out the names and place of residence of two witnesses, the diligence used to procure their attendance, what they expect to prove by the witnesses, and showing its materiality, and certain other formal averments.    The affidavit, however, fails to state that a continuance is not sought for delay ; and it is shown by a statement made by the judge, appended to a bill of exceptions to the ruling of the court on the application for a continuance, that it was refused solely on the ground of this defect in the affidavit.

In this ruling the court did not err.    One of the requisites

for a first continuance by the accused in a criminal case, for the want of a witness, is that he shall state "that the application for continuance is not made for delay." Code Cr. Proc., art. 518 (Pasc. Dig., art. 2987). The application did not come up to the requirements of the Code. Applications for continuances, not based upon the statute, and which do not meet its requirements, are addressed to the discretion of the court to whom they are made, and should be granted or refused according to the circumstances; and the ruling of the court thereon will not be revised on appeal, except in a clear case of abuse of that discretion. *Baldessore* v. *Stephanes*, 27 Texas, 455; *Nelson* v. *The State*, 1 Texas Ct. App. 41; *Jackson* v. *The State*, 4 Texas Ct. App. 292, and authorities there cited. The subsequent action of the appellants did not cure the defect in the first affidavit.

2. It is urged on the part of the appellants that "it was gross injustice to the defendants to allow the confessions of Reuben Zumwalt to be placed before the jury,"— on the ground, apparently, that he was under arrest at the time they were made.

It is true that, by the provisions of the Texas Code, a "confession shall not be used if at the time it was made the defendant was in jail, or other place of confinement, nor while he is in custody of an officer, unless such confession be made in the voluntary statement of the accused, taken before an examining court in accordance with law; or made voluntarily, after having been first cautioned that it may be used against him; or unless, in connection with such confession, he make statement of facts or circumstances that are found to be true, — [for example] such as the finding of secreted or stolen property," etc. Still, if, under the above rule, "the confession was freely made, without compulsion or persuasion, they are admissible." Pasc. Dig., arts. 3126, 3127.

We are of opinion the court took a correct view of the law bearing on the subject of these statements of Zumwalt, set out in the explanation to a bill of exceptions taken to the ruling upon the evidence, as follows: "The court permitted said statement because it proved to be true, by leading to where the horses were, though already found by two other persons not of the house-surrounding party, and because it had been shown that these co-defendants were seen together in Gonzales County the day the horses disappeared."

3. With reference to alleged error in refusing a new trial, several of the grounds of the motion have already been considered. As to the charge of the court on the subject of principals or principal offenders, we are of opinion the law of the case, as applicable to the facts proved, was properly given to the jury. *Berry* v. *The State*, 4 Texas Ct. App. 499, and authorities there cited; *Bybee* v. *The State*, 4 Texas Ct. App. 505.

As to the general charge, the question of the guilt or innocence of the accused was fairly submitted to the jury. The charge refused can hardly be said to be applicable to the case as made by the proofs. The several grounds of error complained of have been carefully considered; and from the whole case as here presented, we find no such error as would warrant a reversal of the judgment or the granting of a new trial. The judgment is affirmed.

*Affirmed.*